# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 6720 | **DATE** | 8/28/2000 |
| **CASE TITLE** | | Nance vs. Friedman | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, defendant's motion for summary judgment is granted in part and denied in part. This case is set for status on September 6, 2000 at 9:30 a.m. for the purpose of setting a trial date on the remaining claims.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | AUG 2 8 2000 | | |
| ✓ | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | | | 101 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| OR | courtroom deputy's initials | | date mailed notice | | |

ED-7
FILED FOR DOCKETING
00 AUG 27 AM 11: 06
Date/time received in
central Clerk's Office

mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LASHONE D. NANCE and )
KRISTIN CALKINS, individually )
and on behalf of all others similarly )
situated )
          Plaintiffs, )
           )
           )
    v. )    **Case No.**    **98 C 6720**
           )
           )
LAWRENCE FRIEDMAN P.C. )
           )
           )
          Defendant. )

DOCKETED

AUG 2 8 2000

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On October 18, 1999, over the defendant's objections, the Court certified a class of approximately 25,000 Illinois residents who received collection form letters from the defendant law firm Lawrence Friedman P.C. ("Friedman"). 1999 WL 966444 (N.D. Ill. Oct. 18, 1999). The Friedman law firm sent out thousands of debt-collection letters from attorney Michael Dimand on the law firm's letterhead. Lashone Nance and Kristin Calkins, the class representatives, both received identical letters (Nance's letter was sent to collect on a car loan, and Calkins' was sent to collect on a debt to Ravenswood Hospital). On behalf of the class, Nance and Calkins claim that these letters violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692g, 1692e(3) and 1692e(5). Friedman has filed a motion for summary judgment, arguing that the class' claims fail as a matter of law.

1

A collection letter must include a "validation notice" explaining that the debtor has 30 days to dispute the debt otherwise the collector may deem the debt as being valid. *See* 15 U.S.C. §1692g. Nance and Calkins say that the Friedman letters' demand for immediate payment, coupled with a threat of suit, undermines or "overshadows" this required provision.

As the plaintiffs concede, the Friedman letters did contain the required validation notice: "Unless you, the recipient of this notice, within thirty (30) days after receipt dispute the validity of this debt or any portion thereof, the debt will be assumed to be valid." *See* Def. Exs. A-B. This notice may be deemed overshadowed or diluted, however, when the letter also demands that the debtor act before the expiration of the 30-day period (*e.g.*, "within one week of the date of this letter") or threatens action on the part of the creditor before the end of the 30-day period (*e.g.*, a lawsuit). *See Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997); *see also Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). In other words, a debt collector cannot undercut the required notice by surrounding it with inconsistent language likely to confuse an unsophisticated debtor. *Bartlett*, 128 F.3d at 500.

The Friedman letter has no such inconsistent language. Contrary to the plaintiffs' assertions, it does not demand immediate payment or threaten immediate legal action; rather, in plain language it emphasizes that no action will be taken until the 30-day period has expired. Indeed, in addition to the validation notice, the letter advises the debtor that collection efforts will not continue if the debtor advises the law firm of a dispute as outlined in the validation notice. Moreover, the validation notice is in the second paragraph on the front of the letter, not buried on the back or in small type. The letter does provide that if the debtor does not contact Friedman, the law firm will have no alternative but to commence legal action. But immediately

following that sentence is the 30-day validation notice, so while the letter does require that the debtor notify Friedman to avoid legal action, it gives the debtor 30 days to do so.[1] And the plaintiffs have not suggested how such a statement could be deemed misleading or contradictory. The letter does not require immediate or prompt action, nor does it set forth a time period contrary to the 30-days given in the letter. The Friedman letter therefore does not suffer from the usual defects that support an overshadow or dilution claim.

Although there is no contradictory language in the Friedman letter, this does not end our inquiry, as a collection letter "may confuse even though it is not internally contradictory." *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999); *see also Bartlett*, 128 F.3d at 500-01 ("A contradiction is just one means of inducing confusion."). Confusion is an issue of fact, not a question of law. On summary judgment, this means that the plaintiffs must offer some evidence that creates a triable issue as to whether the letter is likely to confuse the unsophisticated debtor. *Johnson*, 169 F.3d at 1060; *Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999).

The "unsophisticated debtor" standard is a low one, protecting the "uniformed, naive, or trusting" debtor, but it is still an objective standard. *See Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (quoting *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994)). A statement will not be "confusing or misleading unless a significant fraction of the population would be similarly misled." *Pettit*, 211

---

[1] We note that under §1692g(b), Friedman was not required to cease collection pending the 30-day validation period. "The debt collector is perfectly free to sue within thirty days; he just must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor." *Bartlett*, 128 F.3d at 501-03.

F.3d at 1060. A FDCPA plaintiff must therefore present some evidence that the letter would confuse the average unsophisticated consumer. The plaintiffs summon their own deposition testimony as evidence that the Friedman letter is confusing to the unsophisticated debtor; both Nance and Calkins claim to have been baffled by the letter. Pltfs. Opp. at 23-24. But the Seventh Circuit has recently held that this is not enough. According to *Pettit*, the plaintiff's own "self-serving deposition testimony" that the letter was confusing does not create a genuine issue as to whether others in that population would believe the same thing. Instead, to create a genuine issue for trial, *Pettit* suggests that a plaintiff must present expert testimony, the opinions of an objective observer, or survey evidence or testimony. *Id.* at 1061-62; *see also Johnson*, 169 F.3d at 1060. Such evidence may not be required in all FDCPA cases; in *Avila*, evidence of consumer confusion was unnecessary, as the letter on its face contained an inconsistent statement. *See, e.g., Avila*, 84 F.3d at 226-27. But the Friedman letter does not use contradictory language or improperly suggest urgency, and thus the letter itself does not create a genuine issue of fact. *See, e.g., Johnson*, 169 F.3d at 1060 ("If all the plaintiffs have to go on is the language of these letters, they must lose in the end."). Therefore, because the plaintiffs have offered nothing more than their own testimony, there is no genuine issue of fact for trial. For these reasons, we grant Friedman's motion for summary judgment as to plaintiffs' overshadowing claim.

The second class claim, and what seems to be the main claim against Friedman, is that the law firm violated §1692e(3) of the Act by sending out collection letters on its letterhead and from attorney Michael Dimand without there being any real meaningful attorney review. Nance and Calkins allege that the Friedman letters were not "from an attorney" in any meaningful sense because the attorney review was scant and inadequate.

Consumers are more inclined to respond to an attorney's threat than to a debt collector's; a collection letter on an attorney's letterhead conveys authority. *Avila*, 84 F.3d at 229 ("An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up."). Thus, where a collection letter is from the desk of an attorney, the debt collector should be required to demonstrate that an attorney was "professionally involved in the debtor's file . . . [a]ny other result would sanction the wholesale licencing of an attorney's name for commercial purposes . . . ." *Id.* Section 1692e(3) therefore requires an attorney who signs a collection letter to have had direct and personal involvement in the review of the debtor's file and preparation of the letter. An attorney does not have to do the review himself to comply with §1692e(3); he may approve letters based the recommendations of those working under him. *Id.* at 228. That said, however, an attorney cannot simply approve a "form" collection letter and be in compliance with §1692e(3). *Id; see also Clomon v. Jackson*, 988 F.2d 1314, 1321 (2nd Cir. 1993). Some form of individual review is required.

In *Avila* and *Clomon*, there was no individual attorney review of the debtors' files; the attorneys simply approved a form collection letter used in a mass mailing. As the court in *Clomon* explained, "there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by section 1692e." *Clomon*, 988 F.2d at 1321. These cases are distinguishable from the case at hand. Unlike in *Avila* and *Clomon*, Friedman has presented evidence that attorneys reviewed the debtors' files before the firm mailed the letters. Indeed, three attorneys at the Friedman firm – Michael Dimand, Tim Yueill and Mark Weidman – testified that they individually reviewed creditors' file materials prior to authorizing the mailing of collection letters and signed log sheets

documenting that review. However, despite this evidence, we believe that there is a jury issue here as to whether this alleged attorney review was meaningful under §1692e(3). *See, e.g., Nielsen v. Dickerson*, No. 98 C 5909, 1999 WL 754566, at * 3-4 (N.D. Ill. Sept. 9, 1999) (finding that the defendant's "review" constituted veneer compliance with the FDCPA, as the information analyzed was insignificant and uninformative as to the particular circumstances of each individual account); *Dalton v. FMA Enterprises, Inc.*, 953 F. Supp. 1525, 1533 (M.D. Fla. 1997) (finding a genuine issue of fact as to whether the level of attorney involvement was indeed meaningful).

While it appears that Dimand (and the other two attorneys) had more information before them than the limited name, account and debt amount information the attorneys had in *Nielsen* and *Dalton*, at this stage of the litigation, we are not in a position to determine whether Dimand's review of this information was adequate or meaningful. Dimand admits that he was the attorney who reviewed most of the 25,000 debtor files at issue here. On average, he says, he spent 2-3 minutes reviewing each account; some accounts required more time, while others required much less. Dimand Dep. at 44-45. However, Dimand could only speak in generalities about his attorney review; he could not specifically describe what he did to review individual accounts. And on at least two occasions, Dimand's log sheets suggest that he reviewed more files than he could have possibly reviewed in a given day if one accepts his time estimates. His specific recollection was so lacking that when confronted with this information, he could not account for the inconsistency; he could only say that his time estimates were rough. *Id.* Friedman attempts to clarify this inconsistency by arguing that Dimand could have performed this review before or after the log-in date. Def. Rply. at 18. All this proves, however, is that the defendant's evidence

of individual review may not be entirely accurate. Embracing Friedman's argument would require that we assess the credibility of Dimand's testimony, which is genuinely in dispute. Whether Dimand exercised meaningful professional judgement before sending the collection letters on the Friedman law firm's letterhead can only be determined at trial.

Friedman argues that because the uncontradicted evidence is that Dimand and other attorneys did review every debtors' file, that review, even if scant, was sufficient under §1692e(3). In *Jenkins v. Heintz*, 124 F.3d 824, 832 (7th Cir. 1997), the Seventh Circuit stated, in a different context, that attorney and non-attorney debt collectors stand on equal footing under the FDCPA. In that case, a law firm sent a letter to collect on a particular client's delinquent account not knowing that it was attempting to collect a debt that included unauthorized charges. The court held that the lawyers were insulated from liability for this error under the FDCPA's bona fide error defense. The fact that the debt collectors were lawyers did not require that they be subjected to a "separate, perhaps higher standard" of liability. *Id.* at 833. Friedman takes this to mean that no extra review is required simply because the debt collector is an attorney.

We disagree with Friedman that *Jenkins* sanctions cursory, scant or meaningless attorney review of mass-mailed debt collection letters. Rather, the case stands for the proposition that lawyer debt collectors are not required to conduct a full scale investigation into the "legal intricacies of the client's contract" in order to avail themselves of the bona fide error defense. *Id.* at 834. But that does not mean that no meaningful review is required; otherwise, the attorney's collection letter would deceptively suggest that an attorney had actually done something meaningful, when in fact his signature was nothing more than a rubber stamp. Under *Jenkins*, the attorney may not be required to perform a top-to-bottom review before sending out a

collection letter, but *Avila* (which the Seventh Circuit has not overruled) teaches that the attorney must have "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action." *Avila* 84 F.3d at 229. As explained above, the determination of whether Friedman met this requirement poses genuine factual issues that cannot be resolved on summary judgment.

Finally, Nance and Calkins say there is a third class claim, and because Friedman has not moved for summary judgment on this claim, it remains for trial. Pltfs. Opp. at 1, n.1. The issue is whether the collection letters violate §1692e(5) of the FDCPA because they improperly threaten action that cannot legally be taken. Nance and Calkins say that because the creditors, Friedman's clients, had not yet made a decision to pursue litigation, the letters' claim that a lawsuit was imminent was untrue.

Friedman says it did not move for summary judgment on this claim because the proposed third amended complaint (where the §1692e(5) claim was first raised) was never actually filed after leave to file was granted. Def. Rply. at 22-23. On December 16, 1999, the Court gave plaintiffs leave to file a third amended complaint, with one correction (actually a deletion) that Friedman insisted upon. Though plaintiffs did not actually file the third amended complaint until April 21, 2000, Friedman was on notice of this claim in December, as the proposed third amended complaint was attached to the plaintiffs' motion for leave to file it. Under the circumstances, it was unreasonable for Friedman to avoid addressing the third claim in its summary judgment papers; even when plaintiffs ultimately filed the corrected complaint, Friedman did not act. The Court does not intend to go through another round of summary judgment briefing and therefore denies Friedman's request for additional time to file summary

judgment on this claim.

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment is granted in part and denied in part. This case is set for status on September 6, 2000 at 9:30 a.m. for the purpose of setting a trial date on the remaining claims.

Dated: August 28, 2000

MATTHEW F. KENNELLY
United States District Judge